UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COREY A. ASKEW,

       Plaintiff,                        Case No. 07-11820

                                              David M. Lawson
vs.                                          United States District Judge

SERGEANT CROPSEY,              Michael Hluchaniuk
LIEUTENANT BUSH,                United States Magistrate Judge

       Defendants.
_____/

# REPORT AND RECOMMENDATION
# ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I.    PROCEDURAL HISTORY

On April 26, 2007, plaintiff filed the present cause of action alleging violations of his Constitutional rights pursuant to 42 U.S.C. § 1983. (Dkt. 1). His application to proceed without prepayment of fees was granted on May 1, 2007. (Dkt. 3). The case was dismissed for procedural reasons on June 28, 2007, but was reopened on July 20, 2007. (Dkt. 5, 7). Plaintiff filed a motion for temporary restraining order on August 7, 2007 and the case was referred to Magistrate Judge Donald A. Scheer, for pretrial matters, on August 9, 2007. (Dkt. 8, 9). Magistrate

Judge Scheer recommended that the motion for temporary restraining order be denied, which recommendation was adopted by District Judge David M. Lawson on November 21, 2007. (Dkt. 14). On January 14, 2008, this case was reassigned from Magistrate Judge Scheer to the undersigned.

On March 11, 2008, defendants Cropsey and Bush filed a motion for summary judgment. (Dkt. 27). After an extension of time for responding to the motion, plaintiff filed a response to the motion on April 2, 2008. (Dkt. 33). Defendants' motion referred to certain policy directives of the Michigan Department of Corrections (MDOC) that were not provided to plaintiff pursuant to a claim of exemption. *Id*. An order to show cause was entered on June 27, 2008 requiring defendants to show cause why those policy directives should not be turned over to plaintiff and a response was filed by defendants on July 14, 2008. (Dkt. 36, 38). In conjunction with the response, defendants filed a motion for protective order regarding the policy directives, which was granted on July 15, 2008). (Dkt. 39, 40). On July 31, 2008, plaintiff filed a motion for reconsideration of the order granting protective order. (Dkt. 42).[1]

---

[1] Plaintiff also filed a motion for the appointment of counsel on July 9, 2008 (Dkt. 37). This motion and the motion for reconsideration will be denied via separate order as moot in light of the conclusions reached herein.

It appears that the motion for summary judgment can be decided without further information or arguments from the parties and, based on the submissions of the parties, it is **RECOMMENDED** that, with respect to plaintiff's federal claims, defendants' motion for summary judgment be **GRANTED**, and that plaintiff's state law claims be **DISMISSED** without prejudice.

## II. STATEMENT OF FACTS

### A. Chronology of Events

On November 8, 2006, plaintiff was a prisoner in the custody of the State of Michigan, housed in the segregation unit of the Southern Michigan Correctional Unit in Jackson, Michigan. (Dkt. 1). On that date, another resident of the segregation unit, who was housed in the same wing as plaintiff, was to be removed from his cell. (Dkt. 27, Exs. 1, 2). The other prisoner proved to be uncooperative causing the corrections officers, Lt. Jeremy Bush and Sgt. Daniel Cropsey, to resort to the use of a "chemical agent" to accomplish the goal of moving the prisoner. *Id*. According to their affidavits, defendants Bush and Cropsey sought authorization to use the chemical agent and checked to see if anyone in that wing of the segregation unit had been previously determined to have special medical problems that would make the use of a chemical agent more problematic than normal. *Id*.

Although defendants found that no prisoner in the wing had pre-determined medical problems that complicated the use of a chemical agent, plaintiff, apparently being aware of what was about to take place, asked to be moved from the location. (Dkt. 27, Ex. 2). Defendants denied plaintiff's request which, they say, was based on a policy directive that provided that prisoners without special medical conditions should not be moved under these circumstances. (Dkt. 27, Ex. 1, 2).

Defendants proceeded to effect the removal of the other prisoner. *Id*. His unwillingness to cooperate with the officers necessitated the use of the chemical agent on two occasions. While corrections staff attempted to minimize the disbursal of the chemical agent by the use of an exhaust fan, the fan was not working. *Id*. The gas did disburse through the wing and, according to plaintiff, reached his cell and caused him to gasp for air, sneeze, vomit and experience a "severe" headache. *Id*. Plaintiff was seen by the Health Unit Manager at approximately 12:30 p.m. that day and by another health care professional at 4:15 p.m. (Dkt. 1, Exs. A, B). Plaintiff was given over the counter pain medication for his symptoms. *Id*. Plaintiff was seen by health care staff again on November 10, 2006, at which time he reported a headache, a scratchy throat, and watery eyes, all

of which he attributed to the use of the chemical agent on November 6, 2008, near his cell. *Id*.

Subsequently, plaintiff filed a grievance relating to this incident and was not provided with the relief he sought. (Dkt. 1, Exs. A, B). This lawsuit follows the conclusion of the grievance process. *Id*.

B.  Plaintiff's Complaint

Plaintiff claims entitlement to relief pursuant to 42 U.S.C. § 1983, alleging that he was denied his rights under the Eighth Amendment to the United States Constitution. (Dkt. 1). He also claims, under Michigan law, that the defendants committed assault and battery and that the defendants acted with gross negligence arising out from the events of November 8, 2006. *Id*.

Section 1983 confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 (1984); *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988). Plaintiff states that, when defendants refused to move him from his cell and then "dispensed excessive amounts of an unknown chemical agent," they acted "maliciously and sadistically with deliberate indifference" and that "constituted cruel and unusual punishment in violation of the Eighth Amendment of the United

States Constitution." (Dkt. 1). Plaintiff also alleges that the acts of the defendants constituted assault and battery under Michigan law. *Id*. As a result of these claims, plaintiff seeks $250,000 in compensatory damages and $150,000 in punitive damages from defendants. *Id*.

### C. Defendants' Motion for Summary Judgment

Defendants filed a motion for summary judgment pursuant to Rule 56(b) claiming that plaintiff failed to make a sufficient showing regarding his claimed Eighth Amendment violations, in that the pleadings do not demonstrate that defendants acted "maliciously and sadistically" when they used a chemical agent to subdue a prisoner in a nearby cell on November 8, 2006. (Dkt. 27). Defendants also claim that they are entitled to qualified immunity because, if a right of the plaintiff was violated, the right was not clearly established. *Id.* Defendants also request that this Court decline to exercise jurisdiction over plaintiff's state law tort claims. *Id.*

Plaintiff responded to defendants' motion by asserting that (1) he has alleged sufficient facts to state an Eighth Amendment claim, (2) the defendants are not entitled to qualified immunity, (3) there are issues of material facts and therefore summary judgment is not appropriate and (4) the court should retain

jurisdiction of the state law tort claim because he has adequately stated an Eighth Amendment claim.

## III. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate under Rule 56(b) "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476, 478-79 (6th Cir. 1995), the court stated the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the non-moving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

A genuine issue of material fact exists only when, assuming the truth of the non-moving party's evidence and construing all inferences from that evidence in the light most favorable to the non-moving party, there is sufficient evidence for a

trier of fact to find for the non-moving party. *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

"In deciding a motion for summary judgment, [the] court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). This is not to say that some credibility determinations are beyond what is appropriate in deciding a motion for summary judgment. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, — U.S. — , 127 S.Ct. 1774, 1776 (2007).

### B. Eighth Amendment Standards

Plaintiff claims a violation of his Eighth Amendment rights relating to an incident where defendants were attempting to address a disturbance in the prison where plaintiff was housed. While plaintiff was not the object of the defendants' actions, the context of these events involved a non-compliant prisoner who happened to occupy a cell near plaintiff's cell.[2] In *Whitley v. Albers*, 475 U.S.

---

[2] Even though plaintiff was not the direct object of the actions of the defendants to restore order in the prison, that does not appear to change the

312, 320 (1986) the Supreme Court set forth the Constitutional standards applicable to an Eighth Amendment violation in this context:

> [I]n making and carrying out decisions involving the use of force to restore order in the face of a prison disturbance, prison officials undoubtedly must take into account the very real threats the unrest presents to inmates and prison officials alike, in addition to the possible harms to inmates against whom force might be used.
>
> * * *
>
> In this setting, a deliberate indifference standard does not adequately capture the importance of such competing obligations, or convey the appropriate hesitancy to critique in hindsight decisions necessarily made in haste, under pressure, and frequently without the luxury of a second chance.
>
> Where a prison security measure is undertaken to resolve a disturbance ... we think the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the purpose of causing harm.'

---

standards that should be used to evaluate the conduct of defendants. *Torres-Viera v. Laboy-Alvarado*, 311 F.3d 106, 107-08 (1st Cir. 2002) (malicious and sadistic standard applied where plaintiff in area with other unruly inmates and hit with tear gas cannister deployed to stop conduct of other prisoners.); *Cooper v. Schomig*, 1997 WL 94735 (N.D. Ill. 1997) (malicious and sadistic standard applied where plaintiff was in room with, but not part of group of inmates who defied orders from prison guards and was exposed to chemical agent).

While *Whitley* dealt with a near riot situation, the Supreme Court later made it clear that the excessive force standards in *Whitley* applied to a broader range of circumstances relating to prison situations. In [*Hudson v. McMillian*, 503 U.S. 1, 5-6 (1992)](#) (emphasis added) the court held:

> ...officials confronted with a prison disturbance must balance the threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force. ... We accordingly concluded in *Whitley* that application of the deliberate indifference standard is inappropriate when authorities use force to put down a prison disturbance. Instead, "the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" (Citations omitted).
>
> Many of our concerns underlying our holding in *Whitley* arise whenever guards use force to keep order. Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates. Both situations may require prison officials to act quickly and decisively. Likewise, both implicate the principle that "'[p]rison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" (citations omitted). **In recognition of these similarities, we hold that whenever prison officials stand accused of using excessive physical force in violation of the**

> **Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.**

In evaluating excessive force claims, courts should consider (1) the injury suffered, (2) the need for the use of force, (3) the relationship between the need and the amount of force used, (4) the perceived threat and (5) efforts made to temper the severity of the force used. *Whitley*, 475 U.S. at 321. In making the evaluation, courts must give deference to decisions by prison officials to maintain prison discipline, as long as those actions are taken pursuant to a considered choice and not in bad faith or for no legitimate purpose. *Id.*

C.  Eighth Amendment Analysis

The significant facts are not in dispute. Defendants sought to remove an uncooperative prisoner from a cell that was near plaintiff's cell. Due to the uncooperative nature of the prisoner who was to be removed, defendants determined that it would be necessary to use a chemical agent to effectuate the removal. Before the removal process, defendants checked to see if any of the other prisoners in the wing of the cell block had health-related problems that would be complicated by the chemical agent to be used.

Plaintiff, being aware of the use of a chemical agent in the area, but having no particular health-related problem, asked to be moved a few minutes before the chemical agent was deployed and his request was denied. Defendants were required to use two separate discharges of the chemical agent as a result of the other prisoner's actions that were intended to frustrate defendants in their efforts to remove him from the cell. The defendants attempted to use the ventilation system to remove some of the chemical agent from the area but the system was not working. Plaintiff suffered headaches, difficulty breathing, nausea and other difficulties from inhaling the chemical agent, some of which, he claims, continue to the present time.

Applying the standards identified above for Eighth Amendment violations to these facts, the undersigned concludes that no reasonable trier of fact could conclude that plaintiff's Eighth Amendment rights were violated. Prison officials are entitled to a great deal of deference in dealing with prison disturbances. In the present circumstances, there was a legitimate penological problem that defendants were obligated to address in order to maintain order. Further, the means they used to address it were reasonable, attempts were made to minimize the consequences of their actions. And, while not insignificant, the injuries suffered by plaintiff were not particularly serious. Plaintiff has alleged that defendants used an

"excessive" amount of the chemical agent but he has not identified any facts that would support such an allegation.[3] Under these circumstances, a reasonable trier of fact could not find that the actions of defendants were undertaken maliciously and sadistically for the purpose of causing harm to plaintiff.

Based on this conclusion, it is recommended that defendants' motion for summary judgment be granted. In light of this recommendation, the undersigned also suggests that the District Court decline to exercise supplemental jurisdiction over plaintiff's state law claims. *See,* United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, ... the state claims should be dismissed as well."); Experimental Holdings, Inc. v. Farris, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims."). Thus, it is further recommended that plaintiff's state law claims be dismissed without prejudice.

---

[3] Plaintiff attached an affidavit to his response to the motion in which he simply states that an "excessive" amount of chemical agent was disbursed. (Dkt. 33, p. 20, ¶ 5). This unsupported allegation is insufficient probative evidence to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

### E. Qualified Immunity

Defendants claim to be entitled to qualified immunity regarding their actions in this case. The doctrine of qualified immunity means that "'[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" [Caldwell v. Moore, 968 F.2d 595, 599 (6th Cir. 1992)](), quoting, [Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)](). In light of the conclusion that defendants did not violate plaintiff's Eighth Amendment rights it may not be necessary to decide on the applicability of the qualified immunity defense to this claim. However, in the interests of completeness the qualified immunity question will be reviewed.

Defendants in the present case were clearly engaged in the exercise of a discretionary function relating to the control of a non-compliant prisoner. For a constitutional right to be "clearly established" it "must be defined in a manner that puts a reasonable official on notice that his actions are illegal or unconstitutional." [Caldwell, 968 F.2d at 599](). In *Caldwell*, the court examined a situation in which the plaintiff, a prisoner, had been shot several times with a stun gun and then placed in a straitjacket following an incident in which the plaintiff persisted in
14

Report and Recommendation
Defendants' Motion for Summary Judgment
*Askew v. Cropsey, et al*: No. 07-11820

creating a disturbance in his prison cell. The court reviewed a series of cases involving the use of a stun gun or the use of tear gas or some other chemical agent. All of these cases indicate that the use of such devices to "maintain discipline in the prison context" was not a *per se* violation of the Eighth Amendment. Under the circumstances of the present case, there was no "clearly established" right of plaintiff such that "any official in the defendant's position would understand that his conduct violates [federal or constitutional] rights." Id. See also, Soto v. Dickey, 744 F.2d 1260, 1270 (7th Cir. 1984) ("The use of mace, tear gas or other chemical agent of the like nature when reasonably necessary to prevent riots or escape or to subdue recalcitrant prisoners does not constitute cruel and inhuman punishment."). If the conduct of the defendants were to be viewed as violating the plaintiff's Eighth Amendment rights under the circumstances they would be granted qualified immunity because their conduct was not contrary to a "clearly established" right of the plaintiff.

## IV. RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that, with respect to on plaintiff's federal claims, defendants' motion for summary judgment be **GRANTED**, and that plaintiff's state law claims be **DISMISSED** without prejudice.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 10 days of service, as provided for in 28 U.S.C. § 636(b)(1) and Local Rule 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Within 10 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall not exceed 20 pages in length unless such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections by motion and order. If the Court determines any objections are without merit, it may rule without awaiting the response to the objections.

Date: August 15, 2008  s/Michael Hluchaniuk
Michael Hluchaniuk
United States Magistrate Judge

# **CERTIFICATE OF SERVICE**

      I hereby certify that on August 15, 2008, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send electronic notification to the following: Christine M. Campbell and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: Corey A. Askew, # 248480, Alger Maximum Correctional Facility, Industrial Park Drive, Post Office Box 600, Munising, MI 49862.

                                                s/James P. Peltier
                                                Courtroom Deputy Clerk
                                                U.S. District Court
                                                600 Church Street
                                                Flint, MI 48502
                                                (810) 341-7850
                                                pete_peltier@mied.uscourts.gov